Good morning, gentlemen. First case on today's docket is Ron Cosydor v. American Express Centurion Services Corp. and American Express Bank, FSB, and Baker Miller Markoff, and Krasny LLC. We have Mr. Timothy Daniels for the appellant and Mr. Tim Shelton for the appellee. And you may proceed when you're prepared to do so. Thank you, Your Honor. May it please the Court, my name is Timothy Daniels. I'm appearing today on behalf of the appellant, Ron E. Cosydor. At the table with me is Attorney Harold Dunham, who is the lead attorney in this case. The procedural history of this case involves two individuals named Ron Cosydor. There is Ron L. Cosydor, the father, and Ron E. Cosydor, the son. For clarity, I'll refer to them as Ron the father, who is Ron L., and Ron the son, who is our client, the appellant. American Express filed suit back in 2007 against High RPM Racer Incorporated, the corporation, and an individual named Ron Cosydor. So the caption of the suit actually read, Ron Cosydor and High RPM Racer Incorporated. It did not specify Ron L. nor Ron E. They ultimately got a judgment down in Union County against Ron Cosydor and High RPM Racer Incorporated. Now, the central issue that is dividing the parties here today is which Ron Cosydor actually was the recipient of the judgment from Union County. We are not in dispute as to whether or not the corporation, High RPM Racer, received the judgment. We are in dispute over which Ron Cosydor was at issue. The fact is that after they received their judgment, the defendants, the appellees here today, proceeded against Ron L., the father. And I'll show that in various documents in the record. But they proceeded against the father up to a point. Then they changed their mind and proceeded against the son, Ron E. Cosydor, the appellant.  Yes, Your Honor. So at some point, Ron E. Cosydor realized that the American Express was going after him to try to collect on the judgment. Now, the important detail that I've not stated so far is the fact that Ron E. Cosydor was the registered agent for High RPM Racer Incorporated. And as the registered agent, he properly received service. The suit stated to Ron Cosydor, we believe it was Ron Cosydor, the father. And it properly stated the name of the corporation for which he was the registered agent at the registered agent's address. Did he ever appear in court to file a motion to dismiss or raise the issue that they're proceeding against the wrong person? He had no reason to, Your Honor. He was the registered agent for the corporation. He does now. He does now. He did after American Express proceeded against his father with the collection proceedings and then turned around and began enforcing it against him. I believe it was October of 2008. And there's no dispute? You believe that he never signed any credit card agreement? That is correct, Your Honor. That's not disputed by the other side at all? There is no signature that we can see in the record. There is an address in the record that you can make the address wherever you want a bill to go. And what do you make of the fact that the Social Security number apparently was Ron Ellis? Well, Your Honor, that's interesting because this case deals with the intent of the party. And the objective manifestation comes into play here. Who did American Express intend to sue in this case? If we look at the record, I believe starting at C259 in the record, there's a summons issue. And on it, it clearly states American Express versus Ron Cossador. And beneath it, it has a Social Security number. The last four digits are 3691. That is not the Social Security of my client, Ron E. Cossador. I don't know anyone who could look at that and say if it had that Social that it was intended for that person if that Social doesn't match. If we turn over to C260, we see interrogatory served on a Ron Cossador. And we see once again a Social Security number of 3691. That is not my client's Social Security number. If we go to C261, there's a certificate of mailing a citation. Once again, it's to Ron Cossador. And there's a Social Security number ending in 3691. We go to C- Is that Ron L.'s Social Security number? Absolutely. Okay. If we go to C262, and it continues all the way. In the documents, we hear all the way up to, I believe, 268. Actually, it goes past C268. Okay. So there's this long history of all these documents that are being submitted in the name of Ron Cossador that it has Ron L. the father's Social Security number attached. Even in the record at C252, there's a summons issue that's got an address on it. But that address is to Hyde RPM Racer, the corporation, at 3665 Milligan Hill Road. My client, in his affidavit, clearly states that he has resided at 3677 Milligan Hill Road. That is where he has received the summons for the corporation. That is the registered agent's address. This 3665, it's not clear, but it's believed to be an address for the father, once again, Ron L. So did I answer your question, Your Honor? Yes. Now, the contention advanced by the appellees in this case is that this is irrelevant. Because it came, many of these actions came after the judgment was entered. Well, that's the same time that our client basically had any notice that he may be intended party. And it only came after they basically changed their mind. They can't have a judgment against both Ron Cossadors. It has to be against either one or the other because they only listed one Ron Cossador in their complaint. What they did, it appears, is they got a judgment against my client, the appellant. And then after they got their judgment, they changed their mind and went after the father, Ron L. Cossador. Through a series of many pleadings that they put out, at some point they changed their mind again and went back after Ron E. Cossador, the son. Now, the best evidence in this case of who they were actually trying to sue is who they were trying to enforce it against. They obviously intended to enforce it against Ron L. Cossador because that's who they went after. They went after them immediately at C-252 by serving that address. And then thereafter, all the way up through until I believe it's C-278. All of those documents in succession are after Ron L. the father. That is the Social Security. They just shouldn't have a right to get a judgment against one party and then try to enforce it against another. Now, in their brief, they admit that they didn't have to put a Social Security number on the documents, the citations, to enforce the collection on this judgment. The fact that they chose to put it there is compelling evidence of who the judgment debtor was. What we believe is that when they served the complaint, they served it properly. They served it on the correct corporation. They even served it on the right person who was the registered agent for that corporation. But it was never against our client, Ron E. Cossador. It was only against the corporation. It was for a corporate debt on a corporate credit card where my client never took any authority, never had any liability or responsibility for that debt. But there was a fortunate circumstance here where, through all these machinations, they're able to try to redirect this back to Ron Cossador being the individual rather than the person who has served as the registered agent of the corporation. So the judgment in the lower court is on the corporation? There is a judgment in the lower court on the corporation. There's also a judgment against Ron Cossador. Ron Cossador, but not Ron E. or Ron L. Cossador. Was there any attempt to collect against Ron L.? Okay. I believe that was what I went through with the documents where the Social Security number was applied. If we look at those documents, those are citations to discover assets to third parties. This is American Express putting out a statement saying, First Southern Bank, I want to see the assets of Ron L. Cossador. Here's their Social Security number. How would First Southern Bank ever know to come back and look at Ron E. Cossador's assets? So absolutely there were attempts. I want you to answer my question. Yes. Is there a judgment against the corporation and an individual or just the corporation? There are both, yes. Okay. Both. Correct. And the judgment is against E. or L.? It is against simply Ron Cossador. Okay. That is the fortunate mistake where it was possible to go after one, Ron Cossador, and then kind of in the middle of the situation turn around and try to enforce it also against my client, Ron E. Cossador. Now on the application for the credit card, is it in E. or L. or no initial? There is no signature there, but as far as the application itself, I have it here, and it's in such fine print, I honestly don't see that it's clear here. It is in the name of High RPM Racer, the corporation, but it is in Ron Cossador's name. Well, the application was made by E. or L. My client is just Ron Cossador as far as I can tell from this. So you're saying it doesn't appear to be any middle initial? Correct. Is that what you're saying? Correct. Was there any expert testimony as to who made the application as to handwriting in the lower court? In the lower court, my client, Ron E. Cossador, never appeared because he was the registered agent. Was there any evidence presented at all in the prove up or anything as to who made the application, E. or L.? That's not clear from the record at all, Your Honor. Okay. All there was was it appears to be a default judgment that was entered against Ron Cossador. They never tried to specify whether it was the father or the son in the lower court. Now, one of the arguments that the appellees try to make is that the service on Ron E. Cossador, the son, was personal service, not intended to go at the corporation. Now, the Chucklett case that we've cited states that whenever a party intends to sue for debt on a corporate credit card, if you take a look at the underlying complaint, you need to see whether or not the debt was accumulated in ordinary course of business. There is nothing in the record to indicate that this debt was accumulated in other than the ordinary course of business. There's no allegation that we see in the complaint that says that this is the personal debt of Ron E. Cossador. The Chucklett Course Hell debt. So what was served on Ron L.? Only the corporate complaint or were both of them served? Okay. Our contention is that it was served on Ron L. Cossador the moment that Ron E. Cossador, as the registered agent for that corporation, received service. Because in his affidavit, he clearly states that this corporation, High RPM Racer, is my father's corporation. I have nothing to do with it. I have nothing to do with the credit card accounts. Those are my father's. I am the registered agent. So he was served with the original complaint to the proper registered agent at the proper address. And you're saying it wasn't possible that he was served individually at the same time? Well, that's what the Chucklett case is basically saying. A corporation is separate. Chucklett states that a corporation is separate from its shareholders and officers and conducts its own business. And no person individually does business as a corporation. A reading of the complaint shows that this is a corporate debt. It was properly served. It was properly served on a registered agent. There was no way for our client to know that he was being served individually when he received the complaint from American Express. How should they have served it in order that he would be aware that he was also an individual? Well, since we have two Ron Cossadors, one thing that would have made it clear is that they had enlisted two Ron Cossadors in their complaint. Another way they could have served it is they could have served it on the party having the Ron E designation in his name. But if you're the registered agent for a corporation and you receive service of summons and your name happens to be the same as the principal of that corporation, are you going to believe it's you that is being served with the lawsuit? The judgment is entered against both Ron and the corporation? Correct. With no middle initial? Ron Cossador, not Ron E or Ron L. And that is the distinction, that's the dispute in this case. And what happened in the trial court then? Was there any filings alleging that it was registered agent and not the Ron in the complaint? Our client did not appear in the trial court. I mean after judgment. Was there anything in the trial court after default? Are you suggesting did our client, the appellant, file a motion to vacate the default judgment? Right, yes. Okay. At that point, Your Honor, our client was not willing to concede jurisdiction over himself. He was the registered agent. He got served, though. He did get served or didn't get served? Your client. He did get served. Okay, but he didn't want to. Right, he did not want to concede jurisdiction. He knew that they got a judgment against the dad, and he felt that if he tried to. Now wait a minute, they got a judgment against Ron with no initial. I'm sorry? They got a judgment against Ron with no middle initial. Correct. Okay, so then he's assuming that because there was no middle initial that it's not him. No. No? He did not want to concede jurisdiction over himself, which they never had. He did not want to concede jurisdiction. But what I want to know is the summons had a Ron no middle initial on it, and he accepted that summons. Is that correct? As the registered agent for the corporation. Well, I mean, then it also is, I thought you said in individual capacity also. No, it said Ron Custodial. But on the complaint. It's against Ron in the corporation. It is correct. And he accepted it as Ron. No middle initial. So you're saying he's accepting it as Ron with a middle initial. Only. The wrong one. I actually see this copy. Oh, it will happen when we get to the. All right. And it clearly says in the complaint from American Express versus Ron Custodial and high R.P.M. Racer Incorporated. Period. Okay. That's two. It's a corporation. Individual. Correct. The summons to the corporation and the individual. The summons is kind of another issue. But ultimately, it did get served to Ron Custodial and another one got served to high R.P.M. Racer. Okay. So, okay. Okay. So, he got service as Ron. Not no middle initial. But. Now, he's claiming that it's Ron and he's got a middle initial. It's not the right Ron. It takes a complaint and a summons. Right. It can't just be one or the other. I thought he had both. The complaint was directed to both. When he received the copy of the complaint, along with the service of summons on Ron Custodial, it was clear that it was intended against the corporation. There was no evidence there that it would be against him since he, in his own knowledge, understood that he had nothing to do with these American Express accounts. What was his position with the company?  Any other involvement? It was his father's corporation. The bill actually got sent to his address. You can get a bill sent. Was he employed? What was his involvement apart from being a registered agent? Your Honor, the record isn't all that clear on that point. I don't have personal knowledge of Mr. Custodial's affiliations with the company. But as far as I can tell from the record, he was not an employee. He was an officer in the sense that he was the registered agent for the corporation. There's nothing in the record that would advise us whether or not he was in any way affiliated with the corporation other than being a registered agent and the son of the owner. Correct, Your Honor. That's my knowledge at this point. But nothing was done at the trial level. Is that what you're saying as far as his mill initial? No motions or anything? Correct. Okay. There's no appearance that I know of by either Custodial at the trial level. Okay. Simply a judgment was entered in the name of Ron Custodial. Okay. And that's how we wound up here through the motion and the whole plink that was filed by our client. We'll have the record. We'll go through it. All right. Thank you for your arguments. I know it's a little bit trying to get your point across, but I think that we understand it now. And you will have the opportunity for rebuttal, Mr. Daniels. Mr. Shelton. Thank you, Your Honor. Good morning. Good morning. May it please the Court, Kim Shelton, on behalf of the defendants at least. I want to jump right in. He said he did not want to concede jurisdiction. You don't have to concede jurisdiction. He could have shown up in court and clarified this. He's the only person who had this information that he claims he had. And he did not do anything to resolve this situation. It's puzzling. We have a corporation to serve. We have this Casador who is affiliated with the corporation. And then we have another defendant. He concedes. There's a second defendant who happens to live at his house, at his address. Who is that? If that isn't the person that American Express intended to serve, who did they intend to serve? They served Ron Casador at Ron Casador's address. He chose to say, I am only the agent. There must be some other defendant that they're seeking with that name. And then as an agent, he didn't do anything. As a registered agent, it's sort of disturbing. He had some responsibilities perhaps there to notify the corporation, to arrange for representation, to show up himself. He had responsibilities to the court, to show up and just say, I'm only appearing to protest jurisdiction. There's a terrible mistake here. He could have done that. And as we've already said, he also says he had notice of the judgment. He knew a judgment had been entered. He knew that there was a hearing date set to present. No, no. He knew there was a motion for judgment. He knew there was a hearing date for that. He doesn't show up, doesn't move to reconsider, doesn't appeal, doesn't do 214.01, does nothing. Until 11 months after judgment, he notices a Social Security number on a citation to discover assets that is served on the third party respondent. You asked, and I'm not quite sure, I think you may have misunderstood which one. I don't know. Well, when you start saying this Ron and that Ron, it does get a little confusing. I'm trying to keep the Ls and Es straight so we can stick with those. Exactly. It's very complex. Let me interrupt just for a moment. I tend to agree that if I'm Ron E., I'm going to show up and do something. That doesn't mean I can't do it after I discover the judgment's been entered. And it seems like this is what this trial court did. It barred him from raising a defense that he might have raised earlier on. But why should he be? He's not liable. Except because the judgment was entered against the wrong person, he's now liable. Why should he be barred from raising this as a defense at this point? Well, the Doctrine Raising the Codice says that if you have an opportunity, a prior opportunity to raise a defense or a counterclaim and you do not do that. Those are federal cases, right? No. No? There's a Supreme Court case that says that? Yeah, these are state court cases. It's a state court doctrine that says then you must come back. You can't, I mean, you must. If you have an opportunity to do it, you have to do it. Well, what if he presumed that it was the wrong Ron Cosador because he wasn't the owner? And you state as a fact in your statement of facts that you filed suit against Ron E. Cosador. On what basis do you claim that? Because there's no other Ron Cosador. The basis is the address. There's no other address. I'm sorry. There's no other Cosador who exists at this point except the one at that address, and that is Ron E., and that is shown in the record that that is Ron E. at that, and that they don't exist now. Would that be where you would serve him as a registered agent? Yes, but we are serving, but we weren't serving a registered agent. We were serving two defendants. One was a high RPM racer. And you would be serving him as a registered agent of a high RPM racer. Yes. Where, then, is the other service? The other service was made out. Maybe that's not his problem, though, if he doesn't presume that he's the Ron Cosador that you're suing individually. I have to return to, then, you just sit there and let this catastrophe unfold, watching while judgment gets entered. I mean, if he really believed that, why didn't he do it? Well, the citation was issued against Social Security Number 3691, right? Citation to Discover Assets, 11 months after. So they thought they had a judgment against 3691, who is not Ron E. The citation, let's be really clear here. The citation to discover assets that has that Social Security Number, there's two of them. Those are both given to third-party respondents. He received, this is where I was a moment ago, a personal citation to discover his personal assets, served on him personally. He accepted it by his wife at the only address that we have for Ron Cosador. And that does not have the Social Security Number on it. So why would you then serve an affidavit on Ron L.? What basis would you have to do that? We didn't. I'm saying the third party did. Never on record did we serve anything on Ron L. We served on a third-party respondent that happened to have what apparently is Ron L.'s security number. That's an allegation at this point, but it's not proven. But that's the only time it shows up. We did not serve a Ron L. We've never had anything to do with a Ron L. except that that wrong Social Security Number showed up on a third-party respondent citation. It never showed up on a personal citation. It never showed up once prior to judgment. Back to the application for the credit card, which I have not seen. Is there any little initial in that that you can discern? No. And was there any effort made to... I presume you knew that there were two Ron Cosadors, correct? I don't know that. You don't know that? I don't know that. Well, then how would you know who you were serving? We were serving Ron Cosador and... Well, there are two Ron Cosadors. So how would you know which Ron Cosador? It goes to the address. How much more do we have to do? We have a Ron Cosador at an address who has a credit card. He's been using it, which is the acceptance. In the credit card world, you don't actually sign an application. You activate the agreement by... But we don't know whether or not Ron, he was the one that signed the credit card. We know that the bills were all sent, and the record has them, to Ron Cosador at this address, at Ron E.'s address. That was where all the activity had happened up until they weren't paying on it. And then the effort was made to recover the debt. That was owed on these cards. And all we had was... All we had the information was this man, and this address, and this company. The bills, the invoices, go in the record to Ron Cosador, Next Line, High RPM Racer, Inc., at Ron E. Cosador's address. Do you dispute that the son never signed the credit card? No. He never signed it? Well, I don't know about signing a credit card. He didn't sign any agreement. We don't know whether he signed off on a bill or something. Okay, so then why doesn't Barbara and Chekla apply to this when the son never signed? This is mistaken identity, not misnomer. That's what I think. I mean, that's what my gut is. I'm not making a decision right here, but it seems that those two cases might end it. How do you dispute that? I'm not quite sure I understand the question. Okay. Barbara and Chekla say that a judgment is void when you have mistakenly sued someone, not just misnamed them. At some point, I don't know that it's ever established in our case that there was a mistake in the suit or whether it was a misnaming or a misnomer. I just don't think that's been made clear. You know, Chekla talks about the essence of the problem is who do you intend to sue? And the only evidence we have of what, and it is what is objectively manifested. That is, and the example in Chekla is the complaint itself. What did the complaint show? In Chekla, the complaint had an attached affidavit that said, it indicated that they did not intend to sue the individual. They intended to sue the corporation. It was there, and the court says at the initiation of the lawsuit, that we have no even inkling that there is an intent to sue anyone other than Ronnie until there is this social security number on a citation to discover assets issued to a bank a year after the judgment is entered. That's the first inkling. That's two and a half years after the initiation of the suit. That hardly is an objective manifestation of an intent to sue somebody else. Now, what we are talking about is the difference, not just between the two RONs, but between the corporation and the one RON. But there's nothing in the record. It's the appellant's responsibility to have made a record, and by not showing up ever in court and doing anything, he has no record. He's not just coming back and saying, oh no, this was all RON. What effort was made to collect from RON, Al? None. None, okay. None whatsoever. No affidavits to discover assets? No, those were, no. No, no, no. Nothing in the record. The only citations, and by the way, there are only two. We have a long list of citations to the record which is given to us. Those involve two. It's just different documents bearing the same, or reflecting the same occurrence. You know, different pages of the record have to have this on them. There are only two. And they were to the U.S. Bank and to the First Southern Bank. And those were both issued the same month, and they happened to have the wrong Social Security number on them. But at the same time, but he didn't see, he only saw one of them, which was the First Southern Bank, which came out two months later, which happened to be attached to the citation to discover personal assets of RON E. But RON L. is a total phantom as far as the American Express knew. There was no, they had no knowledge of this person. They didn't try to do anything against him. They didn't do any switcheroos. They just were pursuing the RON who was listed and had accepted the credit card by abusing it and was with his company. And they had that address, and they forthrightly pursued that through to the end and never went after the father. That's why it's not a switcheroo or going, you know, trying to then enforce the judgment against somebody else. Well, there's a difference between it being a switcheroo and it being a total confusion as to what was the identity of the real RON close the door to begin with. Apparently, did they not have any idea, I guess, that there were two? Or do you know, American Express? I don't know, but I don't think they had any idea there were two. So it could have been RON L. all along that was doing everything, correct? But RON L. lived at this address. Whoever lived at this address was doing it. And that's because, and how do you know that for sure? It's the only action that ever occurred in this record. You're saying because the bills went to that address? And a service, a summons were all served at that address. It was accepted at that address by what we thought was our defendant. He does now, much later, comes back. And again, the law of res judicata does not permit this collateral attack. You can collaterally attack a void judgment because it's void for fraud, but there's no allegation even. I mean, that's why the switch, which that word was never used until, that I'm aware of until this morning, that there was this, that we went after one guy and then switched and went after another guy. That's kind of a new concept, and that's why I'm using this switch of rule, which I apologize. But I'm just suddenly, it's a new concept that there was some sort of intentional switch, which begins to imply a fraud kind of a thing, that there's no allegation of that. There's nothing in the record that shows that. And you can only collaterally attack a judgment if it's progenitally entered. It's going to be void and, therefore, escape like the two-year that limitations under 1401 if it's void for fraud purposes. At some point, a judgment gets entered, and if the party doesn't step up and defend itself, it has to become the law. I mean, it's not, it'd be awful if it was a terrible mistake. I think it's so questionable under this record that that would be quite a leap to say that some mistake was done. About my time, I don't think I'm going to talk about it. Well, let me ask about the dismissal. The trial court entered a dismissal on the 2619 motion saying that the Consumer Fraud Act does not apply to attorneys, even from third parties. What about CRIPE? Doesn't CRIPE say, isn't CRIPE limited to suits by clients against attorneys? And Ron E. was not a client. CRIPE, I don't think, is so limited, and I believe that CRIPE has to be seen in its context. CRIPE addressed, CRIPE takes for granted that the Consumer Fraud Act does not apply to attorneys engaged in the practice of law. It spends pages discussing Illinois law set by appellate courts from 1983 on, and blurs and guesses and says, and it says, CRIPE says, quotes from a saying, we don't believe the most liberal statutory interpretation indicates the application of the consumer protection statute to the conduct of an attorney engaged in the actual practice of law. Blurs says furnishing of legal services by a legal profession. So I think CRIPE is addressing whether you could extend that ban on applying the Consumer Fraud Act to billing practices, which are more arguably trade and commerce. The trial court order specifically referred to the CRIPE case. Pardon me? The trial court order, A41, specifically referred to CRIPE. Correctly so, because CRIPE's holding, the actual holding of CRIPE, there was, it did involve a client suing an attorney over billing. But what they're interested in is billing, not legal practices. The actual holding says, where allegations of misconduct, and this is where it says we hold, arise from a defendant's conduct in his or her capacity as an attorney representing a client, the Consumer Fraud Act doesn't apply. I propose an attorney representing a client is coterminous with attorney engaged in the practice of law. And, of course, the reasoning of CRIPE, which is that there's already a regulatory scheme in place, applies to non-clients as well. The rules of responsibility and professional rules apply. Whether there's no client or there's even maybe a third party who will become an adversary, we still have to follow those rules. We are still governed by, as the CRIPE court said, subject to a policing more stringent than that to which purveyors of most commercial services are subject. One quick jump back. You asked several times. I'm not aware of this record that the judgment was ever entered against both. I don't see a judgment against High RPM Racer. The only judgment I saw in the record, and I could be wrong, but I've never seen, is a judgment against Ron Passivort personally. The judgment that was entered, the motion for judgment was against him. The judgment that's entered, the order, only mentions him. I just want to clarify that because I know you asked several times. That's my answer to that. That was a flip-flop act. I'm happy to talk about anything you want to talk about. I mean, I think CRIPE, to say that it only applies in representing a client, or not, it does apply representing a client, any client. That's what attorneys do. But to say that it only applies where a client is suing his own attorney is way too narrow, given the history. We're now 30 years past Fromm and Fromm's existence. And as CRIPE itself pointed out, after it went down to this very broad reading of what the law of the land is in Illinois at this point, any attorney engaged in any practice of law is not subject to the Consumer Fraud Act. It points out that that's been looked at by the legislature, and they've approved, effectively approved it. Thank you, Mr. Shelton. Thank you very much. Mr. Daniels, someone's at home. Counsel, would you walk me through the procedural part of who sued who, or whom, or whatever it is? It's Ron Casador or Ron E. versus, I mean, I'm sorry, the other way around, American Express versus Ron E., or was it Ron L., or was it not? It was simply Ron Casador. And a corporation. Okay. Yes. Then let's go down. Then it was a default entered because no one showed, or there was no answer. Correct. And that judgment then was against Ron, no middle initial, and the corporation, or just Ron? The appellee's counsel may be correct. Okay. Well, we'll find out. Okay. Then let's go one step apart. Now we've got a prove-up, right? Correct. Okay. Was that then you get American Express versus Ron, no middle initial, and the corporation for prove-up at a certain date, a notice sent out by the court? Is that correct? Certainly. And that was received, apparently. There's no objection to that. I don't see anything in the record. All I see in the order is it says that Ron Casador did not appear. I'm assuming that could cover both. Okay. So then the court entered judgment against a Ron. Correct. Casador. Okay. Now, then they filed a citation of discovery access against a Ron, no middle initial? Correct. It started on September 29th of 2009. Actually, that one, the appellate counsel said they only had the one address, the 3677. Well, I'm not worried about the address. Let's get the names first. Okay. One at a time. Okay. So then they set it up for a citation to discover assets against Ron or Ron E. or Ron L. Or just Ron. Your Honor, it actually, the U.S. Bank citation to discover assets was to a third party. So appellate counsel is correct about that. That is the first citation that has the 3691. I don't worry about those here. Let's just get the name. E or L. Yes. Or not. Or not. No, it's simply Ron Casador all the way through. Okay. So then what I'm trying to, how did it get Ron E then? That was, what was the case number at that time? 07L26. Okay. Now, when Ron E. Casador filed his complaint in Union County under the Illinois Deceptive Practices Act, that's when he went in and unfortunately the office put Ron D. Casador, that was later amended to Ron E. Casador. That was the first time that Ron E. Casador appeared in any pleadings other than. In a different case than the. In a different case. It was a 2010 case. That's what I'm trying to get to. Yes. Now, Your Honors. I'm sorry. Go ahead. Okay. As you know, the review here today is de novo. The burden of proof for the affirmative defense that race judicata should apply, that they already have filed suit on the same set of operative facts, is on the appellants. Now, the best evidence of who they intended to sue, we've got right here. All these citations. There's definitely more than just a couple. C-261 has 3691 on it. C-262's interrogatory is directed to a Ron Casador with 3691 on it. And it goes all the way over several pages, all the way up to about 278. Was there ever one that served at a different address? Yes. We have 3805 Milligan Hill Road. And who moved that address? We believe, the record's not clear, that that is an address that the father also had a 3655 Milligan Hill Road. But the key point is that Ron E. Casador always resided at 3677 Milligan Hill Road. That's where he was served with the complaint. That was consistent all the way through. Now, they can only have a judgment against one Ron Casador. In this case, it appears, now we're not, and switch may have been a poor word, we're not alleging that there was any wrongdoing by American Express where they were trying to avoid ethical rules and should be sanctioned. That's not the point of this. The point of this is they went and they got a judgment against a Ron Casador, just not this Ron Casador. The best evidence of who they tried to sue was who they tried to enforce it against. 3691 appears. Other addresses besides 3677 Milligan Hill Road appears. It's very clear. At some point, then they turned around and went back after our client, and at that point, he sought legal counsel. Now, he says it's 11 months later in the Chicala case. It was five years after judgment. Mr. Chicala said, hey, you know, I'm going to do something here because this isn't right. This judgment should have been against the corporation, not against me personally. Res judicata says it must be against the same parties. We obviously have two parties in this case. It was never against the same parties. Thank you. Thank you, Mr. Daniels, for your argument, rebuttal, and your briefs. And thank you, Mr. Shelton, for your arguments and briefs. And we'll take them out under advisement. Thank you.